IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RICHARD R. CADMUS, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:15-CV-045 |
| v. ) | |
| ) | |
| ROBERT T. WILLIAMSON, et al., ) | By:  Michael F. Urbanski |
| ) | United States District Judge |
| Defendants ) | |
| ) | |

## MEMORANDUM OPINION

Pro se plaintiff Richard Cadmus brings this action alleging various federal and state law

claims against Robert Williamson, Sheriff of Frederick County, Virginia, Deputy Doug Nicholson of

the Frederick County Sheriff's Office, State Magistrate Aimee Cook, and other unnamed members

of the Frederick County Sheriff's Office.[1] Cadmus filed his original complaint on June 9, 2015,

naming Williamson, Nicholson, Cook, and twenty-five "John Does" as defendants in both their

official and individual capacities.[2] Williamson and Nicholson filed motions to dismiss pursuant to

Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that the Eleventh

Amendment barred any suit against them in their official capacities and that Cadmus otherwise

failed to state a plausible claim on any count. ECF Nos. 14, 25. Cook likewise filed a motion to

dismiss under Rule 12(b)(1) and Rule 12(b)(6), arguing that judicial immunity barred any suit against

her and that Cadmus failed to state a plausible claim. ECF No. 22. Cadmus subsequently filed a

---

[1] Cadmus also named the Frederick County Sheriff's Office as a defendant in both his original and proposed amended complaints. Cadmus concedes, however, that the Sheriff's Office is not a proper party in this action. ECF No. 45, at 7; see also Clark v. Beasley, No. 3:03-CV-1074, 2004 WL 3222732, at *4 (E.D. Va. July 8, 2004), aff'd, 118 F. App'x 739 (4th Cir. 2005) (noting that a sheriff's office is not an entity independent of the sheriff, and thus cannot be sued). The court thus ignores any reference to the Sheriff's Office as a separate defendant for purposes of this opinion.

[2] While the caption on Cadmus' original complaint names twenty-five "John Doe" defendants, ECF No. 2, at 1, his factual allegations name only twenty "John Doe" defendants. Id. at 2. The court will adopt the higher number.

1

motion for leave to amend his complaint, and attached a proposed amended complaint for the court's review. ECF No. 29. Williamson and Nicholson objected to the motion to amend, claiming Cadmus' amended allegations were made in bad faith and were otherwise futile. ECF No. 41. This matter was referred to United States Magistrate Judge Joel C. Hoppe for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).

In a report and recommendation issued on February 1, 2016, the magistrate judge recommended granting defendants' motions to dismiss, and granting in part and denying in part Cadmus' motion for leave to amend. ECF No. 57, at 56–57. The magistrate judge found that multiple claims in Cadmus' original complaint were barred by either sovereign or judicial immunity, and that Cadmus generally failed to allege sufficient facts to state a plausible claim on any count. The magistrate judge then concluded that Cadmus' proposed amended complaint failed to correct the deficiencies in his original complaint. Nevertheless, the magistrate judge recommended that Cadmus be given leave to file yet another amended complaint alleging any claim not barred by the Eleventh Amendment or judicial immunity. The report gave notice that objections should be filed within fourteen days. Cadmus filed one set of objections on February 16, 2016, ECF Nos. 58, 59, and filed an amended set of objections on February 17, 2016. ECF Nos. 60, 61. Cadmus also filed a motion to stay this court's review of the report and recommendation pending a period of jurisdictional discovery. ECF Nos. 64, 65.

For the reasons set forth below, the court will **ADOPT** the report and recommendation to the extent consistent with this opinion (ECF No. 56), **GRANT** Williamson's motion to dismiss the original complaint (ECF No. 14), **GRANT** Nicholson's motion to dismiss the original complaint (ECF No. 25), **GRANT** Cook's motion to dismiss the original complaint (ECF No. 22), **GRANT in part** and **DENY in part** Cadmus' motion to amend (ECF No. 29), and **DENY** Cadmus' motion to stay pending discovery (ECF No. 64). Cadmus is granted leave to file an amended complaint

within **fourteen (14) days,** subject to the limitations set out in this Memorandum Opinion and the accompanying Order.

**I.**

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

3

Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney, 539 F. Supp. 2d at 845. As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505], 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be given "the second bite at the apple [ ]he seeks." Id. Instead, his re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Absent subject matter jurisdiction, a court must dismiss the action. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 653 (4th Cir. 1999). "Although subject matter jurisdiction and sovereign immunity do not coincide perfectly, there is a recent trend among the district courts within the Fourth Circuit to consider sovereign immunity under Rule 12(b)(1)." Trantham v. Henry County Sheriff's Office, No. 4:10-CV-00058, 2011 WL 863498, at *3 (W.D. Va. Mar. 10, 2011) (collecting cases), aff'd, 435 F. App'x 230 (4th Cir. 2011); see also Hendy v. Bello, 555 F. App'x 224, 227 (4th Cir. 2014) (affirming use of Rule 12(b)(1) to dismiss claims on sovereign immunity grounds). When a defendant raises substantive challenges to a court's jurisdiction under Rule 12(b)(1), the court need not accept the complaint's allegations as true and may consider facts outside the complaint to determine if it can properly exercise subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). At all times, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans, 166 F.2d at 647.

4

In contrast, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.") (internal quotation marks omitted). To be sure, a plaintiff proceeding pro se is held to "less stringent standards" than counseled plaintiffs, and the court must construe his claims liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the court need not ignore a clear failure to allege facts that set forth a cognizable claim. Weller v. Dep't of Soc. Services for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990). Nor is a district required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).

III.

In his objections to the report and recommendation, Cadmus raises over fifteen objections to the findings of the magistrate judge.[3] These objections are evenly divided between objections to the recommendation to dismiss Cadmus' original complaint and the recommendation to grant in part and deny in part Cadmus' motion to amend. In some instances, Cadmus repeats arguments he raised previously or fails to identify any specific error in the conclusions of the magistrate judge. Those objections that reiterate prior arguments or fail to identify specific errors in the report and recommendation are properly construed as general objections, and do not warrant de novo review. See Veney, 539 F. Supp. 2d at 844–46. Nevertheless, the court is able to identify several specific objections that entitle Cook to de novo review. Each objection—whether general or specific—is addressed below.

### A. Defendants' Motions to Dismiss the Original Complaint

As the magistrate judge notes, Cadmus' original complaint "sets forth a long, somewhat meandering series of allegations" against various named and unnamed defendants. ECF No. 56, at 2.[4] Cadmus alleges seven counts brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and the common law of the Commonwealth of Virginia. Count 1 alleges false arrest and malicious prosecution against defendants Nicholson and Cook. ECF No. 2, at ¶¶ 76–79. Count 2 alleges unreasonable search and seizure against Nicholson and two unnamed deputies. Id. at ¶¶ 80–82. Count 3 alleges a conspiracy to violate Cadmus' civil rights against unspecified defendants. Id. at ¶¶ 83–85. Count 4 alleges supervisory liability against Williamson and other unnamed defendants. Id. at ¶¶ 86–89.

---

[3] Cadmus filed objections in four separate pleadings, two filed on February 16, 2016 and two filed on February 17, 2016. ECF Nos. 58, 59, 60, 61. The two later objections are styled as "Amended Objections" that correct errors in the objections filed on February 16, 2016. All pleadings were timely filed. As such, the court will treat Cadmus' later-filed pleadings, ECF Nos. 60 and 61, as the operative objections in this opinion.

[4] As the report and recommendation accurately summarizes the factual allegations supporting the original complaint, the court need not repeat them here. Instead, the court adopts the magistrate judge's summary of the facts as stated in his report.

6

Count 5 alleges equal protection violations against unspecified defendants. Id. at ¶¶ 90–91. Count 6 alleges intentional infliction of emotional distress against unspecified defendants. Id. at ¶¶ 92–94. Count 7 alleges a state law malicious prosecution claim against Nicholson and Cook. Id. at ¶¶ 95– 100. Cadmus also requests injunctive relief "to correct government procedure" but fails to note what specific relief he seeks. Id. at ¶ 101. Williamson, Nicholson, Cook, and the "John Doe" defendants are all sued in both their individual and official capacities. Id. at 1.

### 1. Claims Against Williamson and Nicholson in their Official Capacities

The magistrate judge recommended dismissal pursuant to the Eleventh Amendment of any claim alleged against Williamson and Nicholson in their official capacities as sheriff and deputy sheriff. Cadmus objects, at least with respect to Williamson, and argues that Williamson previously consented to suit in his official capacity in Baber v. County of Frederick, Va., No. 5:12-CV-037, 2013 WL 3788615 (W.D. Va. July 19, 2013). He also argues that any claim against Williamson in his official capacity should be construed as an action against Frederick County and the Frederick County Board of Supervisors. Cadmus claims there is a "causal link" between the policies followed by the Frederick County Sheriff's Office, the Frederick County Board of Supervisors, and Frederick County. As such, Cadmus believes the Eleventh Amendment is inapplicable to any claim against Williamson in his official capacity because those claims are best construed as municipal liability claims. The court disagrees.

The Eleventh Amendment protects a state, its agents, and other "state instrumentalities" from suit for monetary damages in federal court, absent evidence that Congress validly abrogated such immunity, that the state consented to suit, or that the plaintiff seeks only injunctive relief. Bland v. Roberts, 730 F.3d 368, 389 (4th Cir. 2013); see also Clay v. Campbell County Sheriff's Office, No. 6:12-CV-00062, 2013 WL 3245153, at *4 (W.D. Va. June 26, 2013) (describing the three exceptions to Eleventh Amendment immunity). This immunity extends to state officials or "arms of

7

the State" when a judgment against those officials would be paid from the state's treasury. Bland, 730 F.3d at 390. A sheriff is a constitutional officer in the Commonwealth of Virginia, and is thus an "arm of the State" for purposes of the Eleventh Amendment. See Va. Const. Art. VII § 4; Va. Code. Ann. § 15.2-1609; Bland, 730 F.2d at 390. Moreover, "[i]t is well settled that 'a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.'" Francis v. Woody, No. 3:09-CV-325, 2009 WL 1442015, at *3–4 (E.D. Va. May 22, 2009) (citing Williams–El v. Dunning, 816 F. Supp. 418, 420 (E.D. Va. 1993)). Therefore, a suit against a Virginia sheriff and his deputies in their official capacities is actually a suit against the Commonwealth and is barred by the Eleventh Amendment to the extent that the suit seeks retrospective, monetary damages paid from the Virginia treasury. See, e.g., Bell v. City of Roanoke Sheriff's Office, No. 7:09-CV-00214, 2009 WL 5083459, at *2 (W.D. Va. Dec. 23, 2009); Estate of Harvey v. Roanoke City Sheriff's Office, No. 7:06-CV-00603, 2007 WL 602091, at *3 (W.D. Va. Feb. 23, 2007); Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997); Keathley v. Vitale, 866 F. Supp. 272, 276 (E.D. Va. 1994).

In this case, the magistrate judge correctly found that Sheriff Williamson is a constitutional officer, that Deputy Nicholson is his agent, and that any damages awarded against them in their official capacities would be paid by a trust funded through the state treasury. ECF No. 56, at 10–11. As there is no evidence of any abrogation or waiver of immunity under the laws applicable to this case, the Eleventh Amendment bars claims against Williamson and Nicholson in their official capacities as employees of the Frederick County Sheriff's Office. See Bland, 730 F.3d at 391 ( "[T]o the extent that the claims seek monetary relief against the [s]heriff in his official capacity, the district court correctly ruled that the [s]heriff is entitled to Eleventh Amendment immunity."). Claims against these defendants in their official capacities must therefore be dismissed with prejudice.

In his objections, Cadmus cites Baber v. County of Frederick as evidence that the Eleventh Amendment does not apply in this case. ECF No. 61, at 1–3. In Baber, various public employees brought suit against Frederick County and Sheriff Williamson in his official capacity under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq., and the Virginia Gap Pay Act, Va. Code § 9.1-700 et. seq., alleging that they were not fully compensated for overtime hours. Baber, 2013 WL 3788615, at *1. After mediation, the parties in Baber agreed to resolve the dispute pursuant to a proposed settlement agreement, which this court approved on July 19, 2013. Id. However, it is not clear what role the Eleventh Amendment played in Baber. No defendant sought dismissal on such grounds, and this court could find no mention of immunity in any pleading filed in that case. Even assuming arguendo that the Eleventh Amendment applied, there is no evidence that the settlement agreement in Baber precludes Williamson from claiming Eleventh Amendment immunity in this suit. Thus, Baber does not affect the well-established rule that suits for monetary damages against a Virginia sheriff or his deputies in their official capacity are suits against the Commonwealth, and are thus barred by the Eleventh Amendment.

Nor did the magistrate judge err when he refused to to construe Cadmus' suit against Williamson as a claim for municipal liability. To be sure, the Eleventh Amendment does not bar suits against local government entities or municipal officials sued in their official capacity. Gray v. Laws, 51 F.3d 426, 431 (4th Cir. 1995). Yet, as stated above, Virginia sheriffs are constitutional officers, not municipal officers. They "serve separate and distinct from the municipal or local government in which [they] may operate." Brown v. Mitchell, 308 F. Supp. 2d 682, 698 (E.D. Va. 2004) (citing Va. Const. art. VII, § 4); see also Keathley, 866 F. Supp. at 276 ("[A] sheriff is a constitutional officer who serves independent of municipal government.") (internal quotation marks omitted); Olivo v. Mapp, 838 F. Supp. 259, 261 (E.D. Va. 1993) ("[A] sheriff serves independently of both municipal and state governments."). While at least one court has suggested that Virginia

9

sheriffs and municipalities could be jointly liable for certain harms, that decision rested on facts not present in this case. See, e.g., Brown, 308 F. Supp. 2d at 699 (noting that a sheriff and municipality might both be liable for injuries received in local jails, insofar as Virginia law requires that municipalities build and maintain local jails) (citing Va. Code Ann. § 15.2–1638). But see Scott v. City of Virginia Beach, No. 2:10-CV-625, 2011 WL 11004246, at *4 n.1 (E.D. Va. Sept. 29, 2011) (finding that a municipality cannot be liable for the actions of a Virginia sheriff and deputy sheriffs in their operation of a local jail).

Cadmus disagrees with this long-standing precedent in the Fourth Circuit, and claims instead that the Frederick County Board of Supervisors exercises control over the Frederick County Sheriff's Office and directs policymaking for the sheriff and his deputies. In support, Cadmus first cites decisions from other circuits holding that sheriffs are not "arms of the State" for purposes of the Eleventh Amendment. See ECF No. 61, at 2 n.3. However, the magistrate judge correctly discounted these persuasive cases, insofar as they rest on the law of other states. See, e.g., Boyd v. Nichols, 616 F. Supp. 2d 1331, 1343 (M.D. Ga. 2009) (citing Georgia law to suggest that Georgia sheriffs are, in certain cases, not state agents under the Eleventh Amendment). Second, Cadmus cites two decisions from federal courts in Virginia to argue that the magistrate judge should have applied a multi-factor test to determine if Williamson is a state actor under the Eleventh Amendment. In these cases, Blankenship v. Warren County, Va., 918 F. Supp. 970 (W.D. Va. 1996), and McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890 (E.D. Va. 1992), the court discussed eight factors that determine whether a particular entity is immune to suit under the Eleventh Amendment, including:

> (1) [W]hether and to what extent any judgment will be payable from the state treasury; (2) the extent of funding provided to the institution by the state; (3) the extent of the state's control in appointing the governing body of the institution; (4) the degree of the institution's autonomy over its operations; (5) whether the institution is separately incorporated; (6) whether it has the power to sue and be sued and to

10

enter into contracts; (7) whether its property is immune from state taxation; and (8) whether the institution's function is governmental or proprietary.

Blankenship, 918 F. Supp. at 974; McCoy, 788 F. Supp. at 892.[5] However, the magistrate judge was not required to explicitly discuss these eight factors in his report and recommendation. Many courts, both in this district and in the Fourth Circuit, conclude that Virginia sheriffs are state actors—and not municipal officials—without specifically citing the factors discussed in Blankenship and McCoy. See, e.g., Bland, 730 F.3d at 390; Smith v. McCarthy, 349 F. App'x 851, 858 n.11 (4th Cir. 2009); Clay, 2013 WL 3245153, at *4; Bell, 2009 WL 5083459, at *2.

Moreover, application of the eight-factor test only confirms the findings of the magistrate judge. In Virginia, the "duties and authority" of a sheriff are defined by statute. Jenkins v. Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990). The Commonwealth regulates the compensation, training, certification, and uniform requirements of sheriffs and their deputies. Va. Code Ann. § 15.2-1609.2, §§ 1610–1612.1. The Commonwealth also regulates a sheriff's power to appoint deputies, Va. Code Ann. § 15.2-1603, § 1609.1, and requires specific financial accounting for expenses incurred by the sheriff and his employees. Va. Code Ann. § 15.2-1609.4, § 1615.

Perhaps most importantly, any judgment against Williamson in his official capacity is satisfied with funds provided by the state treasury. Virginia sheriffs, like other constitutional officers, are covered by a risk management plan funded by the state. Va. Code Ann. § 2.2-1839; Brown v. Caldwell, No. 7:13-CV-00553, 2014 WL 4540332, at *6 (W.D. Va. Sept. 11, 2014). The state treasury is therefore responsible for any judgment that may be awarded against Williamson and his deputies in their official capacities. This factor weighs strongly in favor of Eleventh Amendment immunity. See Artist v. Virginia Int'l Terminals, Inc., 679 F. Supp. 587, 593 (E.D. Va. 1988) (noting

---

[5] The Fourth Circuit has also outlined a similar test to determine whether an entity is immune to suit under the Eleventh Amendment. Hutto v. S. Carolina Ret. Sys., 773 F.3d 536, 547 (4th Cir. 2014); Cash v. Granville County Bd. of Educ., 242 F.3d 219, 221–27 (4th Cir. 2001).

the "particular significance" of this factor in the Eleventh Amendment analysis), aff'd, 857 F.2d 977

(4th Cir. 1988); see also Ram Ditta By & Through Ram Ditta v. Maryland Nat. Capital Park &

Planning Comm'n, 822 F.2d 456, 457 (4th Cir. 1987) ("While many factors must be considered in

determining whether an entity is the alter ego of the state, it is generally held that the most important

consideration is whether the state treasury will be responsible for paying any judgment that might be

awarded.").

Because a Virginia sheriff is clearly a constitutional officer of the Commonwealth and an arm

of the Commonwealth—and not a municipal entity controlled by the county and its board of

supervisors—Williamson and Nicholson are entitled to immunity under the Eleventh Amendment.

Accordingly, the court will **ADOPT** the magistrate judge's recommendation to dismiss with

prejudice any claims for monetary relief in the original complaint asserted against these defendants

in their official capacities.[6]

### 2. Claims Against Williamson and Nicholson in their Individual Capacities

The magistrate judge also found that Cadmus generally failed to state a plausible claim on all

counts alleged against Williamson and Nicholson. He thus recommended dismissal pursuant to Rule

12(b)(6) of all claims in the amended complaint, including those alleged against Williamson and

Nicholson in their individual capacities. Cadmus did not object to this portion of the report. In

fact, Cadmus agrees that his original complaint failed to state a plausible claim. See ECF No. 29, at

1 ("Plaintiff researched the law and the facts and agrees his [original] [c]omplaint requires

amendment."). After review, the court will **ADOPT** the recommendation to dismiss without

---

[6] This finding does not address Cadmus' claims for injunctive relief, which are not categorically barred by the
Eleventh Amendment. Vollette v. Watson, 937 F. Supp. 2d 706, 714 (E.D. Va. 2013) (noting that the Eleventh
Amendment "does not extend to claims against state officers that seek injunctive relief."). For example, the original
complaint seeks injunctive relief "to correct government procedure." ECF No. 2, at 24. The Eleventh Amendment
would presumably not bar this claim, even if it was alleged against Williamson and Nicholson in their official capacities.
Vollette, 937 F. Supp. 2d. at 716. The distinction is moot at this stage, as the original complaint does not specify what
injunctive relief Cadmus seeks, does not identify which parties he wishes to enjoin, and does not state a plausible claim
that could support an injunction. However, the Eleventh Amendment will not necessarily prevent Cadmus from seeking
injunctive relief in any future complaint.

prejudice all claims in the original complaint alleged against Williamson and Nicholson in their individual capacities.

### 3. Claims Against Cook in Her Official and Individual Capacity

Finally, the magistrate judge recommended granting Cook's motion to dismiss. The factual allegations against Cook arise out of Cadmus' arrest for domestic assault on June 9, 2013. On that day, Nicholson and several deputies arrested Cadmus on suspicion of assaulting his sister and mother. Nicholson transported Cadmus to the Northwest Regional Adult Detention Center ("NRADC"), where he was brought before Cook for a preliminary hearing. Cook issued an arrest warrant for Cadmus based on Nicholson's written complaint, and released Cadmus on bail. Cadmus alleges that the warrant lacked probable cause, and that Cook assisted Nicholson in drafting the criminal complaint against him.

The magistrate judge concluded that the three acts Cook took on June 9—issuing an arrest warrant, setting bail, and assisting Nicholson in drafting the complaint—were judicial acts within Cook's jurisdiction as a state magistrate. As such, the magistrate judge found that absolute judicial immunity shielded Cook from all federal and state claims seeking monetary relief against her in both her individual and official capacities.[7] Cadmus objects, focusing primarily on his allegation that Cook "coached" Nicholson in filling out the criminal complaint before placing Nicholson under oath on June 9, 2013. ECF No. 61, at 4–10. Cadmus argues that Cook stepped outside her judicial role by collaborating with Nicholson to complete the charging document, and acted outside her jurisdiction when she discussed the criminal complaint with Nicholson prior to him being sworn. The court again disagrees.

---

[7] While Cook is directly named only in Count 1 (false arrest and malicious prosecution) and Count 7 (state law malicious prosecution) of the original complaint, Cook assumes that she is also a defendant under Count 3 (conspiracy), Count 5 (equal protection violations), and Count 6 (intentional infliction of emotional distress).

Under both federal and state law, judicial officers enjoy absolute immunity from suits for monetary damages that arise out of acts committed within their judicial jurisdiction. King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992) (describing judicial immunity under federal law); Battle v. Whitehurst, 831 F. Supp. 522, 529 n.7 (E.D. Va. 1993) (noting that "[t]he standards for judicial immunity under Virginia law are substantively the same as those under federal law"), aff'd, 36 F.3d 1091 (4th Cir. 1994). "Magistrates are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges." King, 973 F.2d at 356 (citing Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987)). Two conditions must be satisfied for judicial immunity to apply. First, the judge must not have acted in the "clear absence of all jurisdiction." Id. at 356 (quoting Stump v. Sparkman, 435 U.S. 349, 357 (1978)). Judicial jurisdiction is "construed broadly" and a judge will not lose immunity merely "because the action he took was in error, was done maliciously, or was in excess of his authority." Stump, 435 U.S. at 356. The Supreme Court has illustrated the difference between acts taken in mere excess of jurisdiction and acts taken in a clear absence of jurisdiction, stating:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Id. at 357 n.7.

Second, the challenged act must have been a judicial act. King, 973 F.2d at 357. This determination has two factors: (1) "whether the function is one normally performed by a judge" and (2) "whether the parties dealt with the judge in his or her judicial capacity." Id. (citing Stump, 435 U.S. at 362). "Thus, the absolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her 'exercise of authority is flawed by the commission of grave procedural errors.'" Id. (quoting Stump, 435 U.S. at 359).

14

In this case, the allegations against Cook concern acts she performed in her role as a state magistrate. Issuing arrest warrants and setting bail are clearly judicial acts, and fall within a state magistrate's subject matter jurisdiction under Virginia law. See Va. Code Ann. § 19.2-45 (describing the powers of a magistrate); Va. Code Ann. § 19.2-45 (describing a magistrate's authority to issue arrest warrants); see also Day v. City of Hampton, No. 99-CV-1160, 2001 WL 34803137, at *3 (E.D. Va. June 14, 2001) (finding that a state magistrate was "clearly entitled" to judicial immunity in civil suit arising from a challenged arrest warrant), aff'd sub nom., Day v. Spratley, 21 F. App'x 183 (4th Cir. 2001). Even if the warrant for Cadmus lacked probable cause or was otherwise issued with malicious intent, Cadmus' allegations do not "render [Cook's acts] any less judicial, nor permit a determination that [Cook] acted in the absence of all jurisdiction." King, 973 F.2d at 357.

It is a closer question whether judicial immunity shields Cook from liability for allegedly coaching Nicholson to complete the criminal complaint. Cadmus argues that Cook acted outside her jurisdiction because she did not put Nicholson under oath before speaking with him on June 9, 2013. Cadmus believes that a Virginia magistrate lacks jurisdiction over a probable cause hearing until the moment the complainant has been sworn. However, Cadmus cites no support for this argument. Further, controlling precedent teaches that a judge's jurisdiction must be "construed broadly" when determining whether that judicial officer acted in a "clear absence of all jurisdiction." King, 973 F.2d at 57 (citing Stump, 435 U.S. at 356). Even judicial acts "unauthorized by the laws which govern [a judge's] conduct" can be protected by judicial immunity. Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985). As the Fourth Circuit explained, a judge who exceeds her authority "is subject to correction on appeal," but is "not expose[ed] to a claim for damages in a private action." Id. In light of this precedent, the court finds that Cook's alleged discussion with Nicholson, even if it exceeded her authority under Virginia law, was not taken in the complete absence of jurisdiction.

15

In the same way, the court is satisfied that Cook did not step outside her judicial role by helping Nicholson draft the criminal complaint. In his objections, Cadmus claims it is not a judicial function to direct arresting officers on how to complete criminal complaints. Yet persuasive precedent holds otherwise. For example, in <u>Barnes v. Winchell</u>, 105 F.3d 1111 (6th Cir. 1997), the Sixth Circuit held that judicial immunity shielded a municipal judge accused of helping private citizens file criminal charges against a neighbor. <u>Id</u>. at 1113, 1119. While the judge in <u>Barnes</u> went so far as to direct the complainants to change specific phrases in their complaint, the court distinguished that case from those in which a judge, on his own initiative, files criminal charges against a suspect. <u>Id</u>. at 1116–19. In the latter circumstance, a judge performs a "purely prosecutorial function" that falls outside judicial immunity. <u>Id</u>. at 1118. In the former, the judge merely presides over a case "brought before the judge independently by the parties." <u>Id</u>. As the Sixth Circuit explained: "[t]he protection afforded by absolute judicial immunity is not foreclosed when an action, even if prosecutorial in nature, relates to a function normally performed by a judge or where the parties are dealing with the judge in his judicial capacity." <u>Id</u>. at 1119. Because helping a complainant draft a formal complaint was, at most, a "grave procedural error" the Sixth Circuit found that judicial immunity was still available. <u>Id</u>. at 1119–20. Other courts have reached the same conclusion on facts even more troubling than those alleged in <u>Barnes</u>. <u>Jones v. Harris</u>, 22 F. App'x 520, 521 (6th Cir. 2001) (applying judicial immunity where a judge gave prosecutors legal advice to improve their case); <u>King</u>, 973 F.2d at 358 (applying judicial immunity where a state magistrate directed officers to conduct a warrantless arrest of the plaintiff); <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc) (applying judicial immunity where a judge and prosecutor conspired to "predetermine the outcome of a judicial proceeding"); <u>Harris v. Deveaux</u>, 780 F.2d 911, 916 (11th Cir. 1986) (applying judicial immunity where a judge ordered officers to file charges against a witness who testified during a preliminary hearing).

16

While Cadmus attempts to distinguish this precedent, the court finds cases like <u>Barnes,</u> <u>Jones, King, Ashelman,</u> and <u>Harris</u> directly on point. The alleged acts described in Cadmus' original complaint involve Cook's duties as a state magistrate. As such, Cook has absolute judicial immunity from official and individual capacity claims against her. Accordingly, the court will **ADOPT** the magistrate judge's recommendation to dismiss with prejudice any claims for monetary relief in the original complaint asserted against Cook in her official or individual capacity.

## 4. Conclusion

For the reasons stated above, the court finds that the original complaint, ECF No. 2, should be dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6). Claims for monetary relief alleged against Williamson and Nicholson in their official capacities are barred by the Eleventh Amendment, while those same claims alleged against Williamson and Nicholson in their individual capacities fail to state a plausible claim as required by Rule 12(b)(6). Likewise, all individual or official capacity claims for monetary relief alleged against Cook are barred by judicial immunity. Therefore, defendants' motions to dismiss the original complaint (ECF Nos. 14, 22, 25) are **GRANTED.**

## B. Cadmus' Motion to Amend

In his motion to amend, Cadmus seeks leave pursuant to Rule 15(a)(2) to file an amended complaint to address the legal and factual errors in his original complaint. <u>See</u> ECF 29. Cadmus attached a proposed amended complaint to his motion, as well as several supporting affidavits and over a hundred pages of various exhibits that are loosely referenced throughout the amended complaint. Ex. 1, ECF No. 29-1; Ex. 2, ECF No. 29-2.[8] Williamson and Nicholson oppose the

---

[8] While the basic allegations in the proposed amended complaint mirror those in the original complaint, Cadmus includes several new counts and new defendants. In addition to Williamson, Nicholson, Cook, and various "John Doe" defendants, Cadmus now alleges multiple counts against other deputies, including John Heflin, Barry Kittoe, and Rick Singhas. Ex. 1, ECF No. 29-1, at ¶¶ 8–13. Further, the amended complaint names Nicholson, Cook, Heflin, Kittoe, and Singhas in their individual capacities, while Williamson and the remaining "John Doe" defendants are still sued in both their individual and official capacities. <u>Id.</u> at ¶¶ 8–13. In all, the amended complaint includes nine separate counts, though it remains difficult to match each count with its corresponding facts. Count 1 asserts a § 1983 claim for violations of the Fourth and Fourteenth Amendments against Nicholson and several "John Doe" defendants

motion to amend, arguing that Cadmus acted in bad faith by changing key facts in the proposed

amended complaint, that many of the new claims in the proposed amended complaint are barred by

the statute of limitations, and that the proposed amendments are futile because Cadmus failed to

state a plausible claim on any count. ECF No. 41. Cook did not file a written opposition to the

motion to amend, but noted her opposition during a hearing before the magistrate judge on

November 16, 2015. ECF No. 48.

The report and recommendation found that Cadmus' claims were not time-barred, but

agreed that many of the proposed amendments were futile because Cadmus failed to correct the

deficiencies in his original complaint. Further, the report concluded that Cadmus acted in bad faith

because a key claim in the amended complaint contradicts facts alleged in the original complaint.

After rejecting Cadmus' explanations for this discrepancy, the magistrate judge recommended

denying Cadmus' motion to amend with respect to this contradictory allegation.

Cadmus objects to these findings on multiple grounds, focusing primarily on the finding of

bad faith. Cadmus claims that any discrepancy between his original complaint and proposed

amended complaint is merely a "clerical error" and an "inadvertent mistake." ECF No. 61, at 12–

14. Cadmus also notes that he is a pro se litigant who suffers from various "cognitive deficiencies"

for the events surrounding Cadmus' arrest on June 9, 2013. Id. at ¶¶ 255–87. Count 2 asserts a claim for municipal liability under § 1983 against Nicholson and other "John Does," though only Williamson, Heflin, Singhas, and the Sheriff's Office are named in the body of the count. Id. at ¶¶ 288–306. Count 2 is the only count that seeks injunctive relief in addition to monetary damages. Id. at ¶ 306. Count 3 (numbered as Count 4 in the proposed amended complaint) asserts a claim for unlawful arrest and conspiracy to unlawfully arrest pursuant to § 1983 and the Fourth Amendment, naming Nicholson and Cook as defendants. Id. at ¶¶ 307–10. Count 4 alleges failure to intercede under § 1983 against Williamson, Heflin, Singhas, Kittoe, and "John Doe" defendants for failing to prevent officers from entering Cadmus' property and home, though it does not describe what specific acts give rise to this claim. Id. at ¶¶ 311–13. Count 5 alleges an "(Equal Protection Violations) conspiracy" under § 1983, and names Williamson, Nicholson, Heflin, Singhas, Kittoe, and Cook as defendants. Id. at ¶¶ 314–20. The body of Count 5 also names several "John Does" as defendants. Count 6 (numbered as Count 2 in the proposed amended complaint) alleges a retaliation claim on the basis of protected speech against the Frederick County Sheriff's Office, Williamson, Nicholson, Cook, and "John Doe" defendants. Id. at ¶¶ 321–29. Count 7 alleges malicious prosecution, presumably under federal law, against Nicholson and Cook. Id. at ¶¶ 330–36. Count 8 (unnumbered in the proposed amended complaint) alleges a state law claim for abuse of process against Nicholson and Cook, id. at ¶¶ 337–43, which Cadmus voluntarily dismissed during a hearing before the magistrate judge. ECF No. 56, at 36. Count 9 (numbered as Count 6 in the proposed amended complaint) alleges a state law claim for intentional infliction of emotional distress against unnamed defendants. Id. at ¶¶ 344–48.

18

that caused him to make multiple errors in the original complaint. Id. at 12. Finally, Cadmus argues

that his amended complaint states a plausible claim on each count and that the Eleventh

Amendment and judicial immunity are inapplicable. The court will address each objection in turn.

## 1. Bad Faith

Cadmus first objects to the finding of bad faith. Rule 15(a) of the Federal Rules of Civil

Procedure requires that leave to amend be "freely given when justice so requires." Fed. R. Civ. P.

15(a). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits

instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).

A court may deny leave to amend only when "the amendment would be prejudicial to the opposing

party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights

Ctr. v. Niles Bolton Assoc., 602 F.3d 597, 603 (4th Cir. 2010). Of these three factors—prejudice,

bad faith, and futility—prejudice is generally considered the "touchstone for the denial of an

amendment." Hillyard Enterprises, Inc. v. Warren Oil Co., Inc., No. 5:02-CV-329-H(4), 2003 WL

25904135, at *2 (E.D.N.C. June 17, 2003) (citing State of Alaska v. United States, 15 Cl. Ct. 276, 279

(1988)); see also Arthur v. Maersk, Inc., 434 F. 3d 196 (3d Cir. 2006) ("We have consistently

recognized, however, that prejudice to the non-moving party is the touchstone for the denial of an

amendment.") (internal quotations omitted).

The magistrate judge's finding of bad faith focuses specifically on the amended allegations

against Nicholson that arise out of Cadmus' June 9, 2013 arrest for assaulting his sister and mother.

In the original complaint, Cadmus claims that Nicholson charged him with assault based on false

statements made by his sister and her boyfriend. The original complaint states:

> Without provocation or evidence, the deputies purposefully
> engineered an investigation that lead to Cadmus being the only
> suspect because they allowed [the complaining witnesses] to
> corroborate each others [sic] self serving statements while they all
> stood in the same room and listened to each other as they gave
> statements to the deputies. Deputy Nicholson and Does One and

> Two conducted a bias [sic] and subjective law enforcement
> investigation without segregating all of the suspects to deduce what
> the actual truth was regarding the incident.

ECF No. 2, at ¶¶ 26–27. These allegations accuse Nicholson of conducting a biased investigation,

and allowing witnesses to make unfounded allegations against Cadmus.

In contrast, the amended complaint alleges that Cadmus' sister never told Nicholson that

Cadmus assaulted her or her mother. Ex. 1, ECF No. 29-1, at ¶¶ 78, 132–42. Instead, Cadmus now

claims that Nicholson fabricated evidence that Cadmus assaulted the two women, and "falsely

alleged" evidence of domestic assault in the criminal complaint. Id. This new theory of liability is at

odds with the theory alleged in the original complaint. Where Cadmus initially accused Nicholson

of shoddy police work, he now accuses Nicholson of inventing evidence to support unfounded

criminal charges.

This new allegation is troubling, both because it conflicts with facts in the original complaint

and because it appears to contradict the very exhibits Cadmus attached to his proposed amended

complaint. For example, the 911 dispatch notes from June 9, 2013 include reports that a male

suspect—presumably Cadmus—"assaulted several subjects" and "push[ed] the door into his mother

and . . . struck her knee." Ex. 16-3, ECF No. 29-1, at 140. On its face, this evidence is inconsistent

with the claim that Nicholson had no evidence to support the assault charges against Cadmus.

Nevertheless, the court is not convinced that Cadmus acted with sufficient bad faith to

preclude him from amending his complaint. First, pro se litigants are afforded significant latitude to

correct defects in their pleadings, especially when those corrections aid in the development of a

potentially valid civil rights claim. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Moody-Williams

v. LipoScience, 953 F. Supp. 2d 677, 680 (E.D.N.C. 2013) ("Liberal construction is particularly

appropriate when a pro se complaint raises civil rights issues."). Further, the original complaint is so

riddled with various grammatical and syntactical errors that is difficult to determine what theory of

20

liability Cadmus initially alleged against Nicholson. Such errors are only compounded by Cadmus'
"kitchen sink" approach to pleading and his failure to make clear what specific conduct and parties
are encompassed in each count.

More importantly, Cadmus moved to amend early in litigation, discovery has not yet begun,
and defendants fail to show how the new allegation against Nicholson would work any real prejudice
against them. The claim that Nicholson fabricated evidence is intertwined with the larger allegations
surrounding Cadmus' arrest on June 9, 2013. Thus, defendants have had ample notice of the general
facts underlying Cadmus' current suit. See Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) ("An
amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts
already pled and is offered before any discovery has occurred."); Davis v. Piper Aircraft Corp., 615
F.2d 606, 613 (4th Cir. 1980) (noting that no prejudice arises where a defendant was made "fully
aware" of the events giving rise to the suit).

Accordingly, the court will not prevent Cadmus from alleging that Nicholson and other
deputies fabricated evidence to support the assault charges against Cadmus. However, Cadmus may
not repeatedly advance contradictory claims in future complaints. While a plaintiff proceeding pro
se is held to "less stringent standards" than counseled plaintiffs, Pardus, 551 U.S. at 94, a court need
not forgive repeated failures to conform to the Federal Rules of Civil Procedure. Abascal v. Hilton,
No. 9:04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 30, 2008), aff'd sub nom., Abascal v.
Jarkos, 357 F. App'x 388 (2d Cir. 2009). Future failures to allege consistent theories of relief may
well result in dismissal.

## 2. Futile Claims

Cadmus next objects to the finding that his amended claims are futile. Courts may deny
leave to amend where the amended complaint will not survive a motion to dismiss. Macon v.
DuPont, No. 3:10-CV-260, 2011 WL 1838785, at *2 (E.D. Va. May 13, 2011) (citing Perkins v.

21

United States, 55 F.3d 910, 917 (4th Cir. 1995)). Cadmus believes his amendments are sufficient because his new complaint forecloses Eleventh Amendment immunity and judicial immunity and otherwise states a plausible claim on each of its nine counts. In the alternative, Cadmus urges the court to grant him further leave to amend. For the reasons stated below, the court finds that Cadmus' proposed amended complaint fails to cure defects in the original complaint. Nevertheless, the court agrees that Cadmus should have the opportunity to file yet another amended complaint alleging any claim not barred by the Eleventh Amendment or judicial immunity.

### i. Amended Claims Barred by the Eleventh Amendment

The amended complaint continues to allege multiple claims barred by the Eleventh Amendment. While Nicholson, Heflin, Kittoe, and Singhas are named as defendants only in their individual capacities, Williamson and the "John Doe" defendants are still sued in both their official and individual capacities. Cadmus attempts to sidestep the immunity issue by alleging that Williamson is liable on a theory of municipal liability under § 1983. However, no municipal defendant is named. Instead, Cadmus continues to argue that his suit against Williamson in his official capacity as sheriff should be construed as a suit against Frederick County and the Frederick County Board of Supervisors.

For the reasons stated in Part III.A.1 of this opinion, this court finds no viable connection between Williamson and any municipal defendant for purposes of municipal liability. Cadmus is correct to note that a local municipal government can be liable under § 1983 for the acts of its employees where those employees inflict injury pursuant to some municipal policy or custom. See, e.g., Strickler v. Waters, 989 F.2d 1375, 1390 (4th Cir. 1993). However, the allegations in the amended complaint involve actions taken solely by Sheriff Williamson and his deputies. As an independent constitutional officer under state law, Sheriff Williamson—not Frederick County—is responsible for any policy that gave rise to the harms Cadmus alleges. Himple v. Moore, 673 F.

22

Supp. 758, 759 (E.D. Va. 1987) ("Under Virginia law, the [s]heriff has been granted the authority to make policy for the [s]heriff's [d]epartment, not for the [c]ounty."). Therefore, there appear to be no facts consistent with the amended complaint that could give rise to liability for a municipal defendant under § 1983. As such, Eleventh Amendment continues to bar official capacity claims against Williamson and his deputies.

To be sure, Cadmus may be able to state a plausible claim on a theory of supervisory liability, failure-to-train, or bystander liability. However, the Eleventh Amendment—as applied via Virginia law—requires that such claims be alleged against the defendants in their individual capacity. See generally Nelson v. Green, 965 F. Supp. 2d 732, 740 (W.D. Va. 2013) (holding that the Eleventh Amendment did not bar individual capacity claims for supervisory liability); Brown v. Mitchell, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004) (same); see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) ("[W]hen supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates."). Because the amended complaint continues to allege claims against Williamson and several "John Doe" defendants in their official capacities, Cadmus has failed to cure the defects in his original complaint. Therefore, the court will **ADOPT** the magistrate judge's recommendation to deny Cadmus' motion to amend with respect to any defendant sued for monetary damages in their official capacity. See Schepp v. Fremont County, Wyo., 900 F.2d 1448, 1453 (10th Cir. 1990) (affirming district court's denial of plaintiff's motion to amend where amended claims were barred by absolute immunity).[9]

---

[9] As noted above, this finding does not apply to any claim for injunctive relief. For example, Count 2 in the proposed amended complaint appears to seek injunctive relief in addition to monetary damages, Ex. 1, ECF No. 29-1, at ¶ 306, though Cadmus again fails to specify the specific relief sought and the defendants to be enjoined. However, the Eleventh Amendment will not categorically prevent Cadmus from seeking to enjoin Williamson, Nicholson, or any other defendant in their official capacities in a future complaint.

## ii. Amended Claims Barred by Judicial Immunity

The amended complaint also continues to allege claims against Cook that are barred by judicial immunity. Cadmus objects on two grounds, arguing that his amended claims defeat judicial immunity and that Cook waived her immunity argument by failing to file a written opposition to his motion to amend. As to the first objection, the court finds nothing in the amended complaint that changes its prior analysis of judicial immunity. Cadmus now alleges that he overheard a brief exchange between Nicholson and Cook after he was arrested and brought before Cook on June 9, 2013, in which Cook spoke with Nicholson about the criminal complaint against Cadmus. Ex. 1, ECF No. 29-1, at ¶¶ 126–30, 143–50. Cadmus also claims that Cook and Nicholson were involved in past criminal complaints against him, which were similarly unfounded. Id. at ¶¶ 111–12. Finally, Cadmus notes that Cook appeared biased against him during the June 9 hearing. Id. at ¶¶ 151–52. However, these allegations do not make Cook's alleged actions any less judicial, nor does it show that she acted with a complete absence of jurisdiction. The precedent cited above teaches that acts similar to those alleged here qualify as judicial acts and are within Cook's jurisdiction as a judicial officer. As such, the court finds nothing in the proposed amended complaint that can plausibly defeat Cook's claim for judicial immunity.

As to the second objection, the court disagrees that Cook somehow waived her immunity defense by not submitting a written opposition to Cadmus' motion to amend. Cook properly raised the issue of judicial immunity in her motion to dismiss, ECF No. 23, at 4–5, and later joined in Williamson's and Nicholson's opposition to Cadmus' motion to amend. ECF No. 48. Cadmus does not cite, nor could the court find, any precedent requiring Cook to re-assert her claim for judicial immunity in a written opposition brief when that claim had already been raised in a motion to dismiss. Moreover, a court can raise the issue of judicial immunity sua sponte when the immunity is clear from the face of the complaint. See, e.g., Peeples v. Citta, 501 F. App'x 109, 111 (3d Cir.

24

2012) ("Although immunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded, the District Court did not err in raising it sua sponte because the defect was clear from the face of [the plaintiff's] complaint.") (internal citations and quotation marks omitted); Shelton v. Seay, No. 99-7020, 1999 WL 1101254, at *2 (10th Cir. 1999) (affirming district court's sua sponte dismissal on immunity grounds where the affirmative defense was "obvious from the face of [the] complaint"). As such, the court is satisfied that judicial immunity continues to shield Cook from the claims in Cadmus' amended complaint. Accordingly, the court will **ADOPT** the magistrate judge's recommendation to deny Cadmus' motion to amend with respect to any claim alleged against Cook in her official or individual capacity.

### iii. Amended Claims Barred by Rule 12(b)(6)

The magistrate judge thoroughly analyzed the remaining amended claims not barred by the Eleventh Amendment and judicial immunity. In short, he found a mixed bag: some claims were clearly futile, while others appeared to state a plausible claim. For example, Count 6 in the amended complaint alleges retaliation on the basis of protected speech. Ex. 1, ECF No. 29-1, at ¶¶ 321–29. Yet, Cadmus did not specify what protected speech gave rise to this claim, and failed to show a plausible causal relationship between protected speech and the alleged retaliation. ECF No. 56, at 50–52. Likewise, while Count 1 charges various violations of the Fourth Amendment, Ex. 1, ECF No. 29-1, at ¶¶ 255–87, the magistrate judge concluded that the alleged facts show, on their face, that deputies had probable cause, exigent circumstances, or consent to search on at least two occasions cited in that count. ECF No. 56, at 43–47. On the other hand, Cadmus alleges that unnamed deputies came inside his home without a warrant sometime in May 2015 to serve a summons. Ex 1, ECF No. 29-1, at ¶¶ 220–25. This allegation, if true, could state a cognizable Fourth Amendment claim.

Cadmus objects to any finding that his amended claims are futile. In particular, he argues that he was pressured into consenting to a search of his home, that officers had no exigent circumstances justifying a warrantless entry, and that his remaining claims for malicious prosecution, conspiracy, equal protection violations, retaliation, and intentional infliction of emotional distress all state plausible grounds for relief. Many of these objections merely repeat arguments raised previously or fail to identify any specific error in the report and recommendation. However, Cadmus specifically requests leave to amend his complaint to cure any defects described in the report and recommendation.

After careful review, the court finds that Cadmus' amended complaint fails to address the various defects that required dismissal of his amended complaint. While more detailed than the original complaint, the amended complaint suffers from the same vague descriptions of the factual and legal grounds for relief that plagued Cadmus' initial pleading. The presence of various futile claims and immune defendants also distracts from any plausible claim that might exist. With that said, Cadmus' revised factual allegations make it possible that Cadmus could state a plausible claim in a future amended complaint.

In light of this fact, and because Cadmus is proceeding pro se, the court will allow Cadmus the opportunity to file yet another amended complaint alleging any claim not barred by the Eleventh Amendment or judicial immunity. Adams v. Jones, No. 2:05-CV-434, 2005 WL 4163671, at *2 (E.D. Va. Oct. 27, 2005) (noting that pro se plaintiffs should be allowed to particularize their claims when their complaint states a "potentially cognizable claim"), aff'd, 170 F. App'x 827 (4th Cir. 2006); see also Muia v. Brookview Rehab Funding, No. 1:10-CV-01315, 2011 WL 1748190, at *1 (N.D.N.Y. May 5, 2011) ("Courts should be more lenient when considering a pro se party's motion to amend than that of a represented party."). Accordingly, the court will **ADOPT** the magistrate judge's recommendation to grant in part and deny in part Cadmus' motion to amend. Cadmus is

26

granted leave to file another amended complaint alleging any claim not already dismissed with prejudice, subject to the specific restrictions outlined in Part V of this opinion

## IV.

After filing his objections, Cadmus moved to stay consideration of the report and recommendation and requested limited jurisdictional discovery pursuant to Rule 26(d) of the Federal Rules of Civil Procedure. ECF Nos. 64, 65. Cadmus also requested an order compelling defendants to identify various "John Doe" deputies described in the amended complaint. ECF No. 65, at 3. For the reasons set forth below, the court finds no stay or discovery is warranted at this time.

### A. Jurisdictional Discovery

Cadmus first requests extensive jurisdictional discovery. As to Williamson, Cadmus requests: (1) financial disclosures from Williamson, the Frederick County Sheriff's Office, the Frederick County Board of Supervisors, and various other municipal entities in Frederick County; (2) agreements between defense counsel, Williamson, and various state agencies; and (3) and multiple "policy documents" from the Sheriff's Office. ECF No. 65, at 2–3. As to Cook, Cadmus requests any "internal polices, directives, and other documentation" relevant to Cook's duties as state magistrate. Id. at 3. Cadmus claims this information is necessary to address "unresolved issues" related to Williamson's and Cook's claims for immunity. Id. at 7.

A district court has "broad discretion" to authorize jurisdictional discovery. See Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 1993). Moreover, while a "modicum of jurisdictional discovery" is sometimes necessary when a defendant raises a jurisdictional defense, that "entitlement is not absolute." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001) (internal citations omitted). Put differently, a plaintiff is not always entitled to jurisdictional discovery, not least "because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." Freeman v. United States, 556 F.3d 326,

342 (5th Cir. 2009); see also id. (noting that "a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.").

In this case, the court believes no jurisdictional discovery is necessary. The overwhelming weight of authority in this circuit shows that Williamson is entitled to Eleventh Amendment immunity as a constitutional officer under state law. Likewise, the scope of Cook's duties as a state magistrate have been well-briefed, and Cadmus has already attached the relevant policy manual to his proposed amended complaint. Ex. 6, ECF No. 29-1, at 93–101. Thus, there is no indication that further discovery would make it more or less probable that any defendant is entitled to immunity in this case. In addition, Cadmus had notice of defendants' immunity defenses since September 2015, yet waited nearly five months to request jurisdictional discovery, and then made the request only after the magistrate judge ruled on defendants' motions to dismiss. As such, the court finds that further discovery is unnecessary, untimely, and would be unduly burdensome on defendants. Barrett v. Lombardi, 239 F.3d 23, 29 (1st Cir. 2001) (affirming denial of discovery motion when the requesting party did not seek discovery until the entry of an adverse judgment); Informaxion Sols., Inc. v. Vantus Group, No. 2:15-CV-00290, 2015 WL 3767456, at *3 (D.S.C. June 17, 2015) ("[A] district court need not allow jurisdictional discovery if such discovery would unnecessarily burden the defendant."); Sportrust Associates Int'l, Inc. v. Sports Corp., 304 F. Supp. 2d 789, 794 (E.D. Va. 2004) (denying discovery motion where discovery would be "nothing more than a 'fishing expedition'"). Cadmus' motion to stay and motion for jurisdictional discovery is therefore **DENIED**.

### B. "John Doe" Discovery

Cadmus also moves to compel discovery of the names and addresses of several "John Doe" defendants. Specifically, Cadmus requests identifying information for: (1) the "bailiffs who arrested

28

and assaulted Cadmus;" (2) the "bailiffs . . . who attempted to break into his Ipad;" and (3) the "bailiffs . . . who subsequently conspired and spoke during the secret meeting while Cadmus was arrested in the back of the courtroom on August 26, 2013." ECF No. 65, at 3. No other identifying information is provided for these "John Doe" defendants.

Federal courts do not favor claims alleged against "John Doe" defendants. However, "John Doe" claims are "permissible when a defendant's identity is not known at the time the complaint is filed and plaintiff could identify the defendant through discovery." Valentine v. Roanoke County Police Dept., No. 7:10-CV-00429, 2011 WL 3273871, at *5 (W.D. Va. July 29, 2011) (citing Schiff v. Kennedy, 691 F.2d 196, 198 (4th Cir.1982)). In addition "plaintiff[s] should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).

In this case, the court is not aware of any prior effort to discover the identity of the "John Doe" defendants named in either the original or amended complaints. Further, while both complaints include multiple allegations against unnamed defendants, Cadmus' motion for discovery includes only cursory descriptions of each "John Doe" he seeks to identify. More importantly, it appears that the "John Does" named in Cadmus' discovery motion are actually defendants in an unrelated action Cadmus filed against the Frederick County Sheriff's Office. For example, neither complaint in this case discusses a search of Cadmus' iPad, nor do they discuss an arrest that took place on August 26, 2013. In contrast, the complaint in Cadmus' unrelated action discusses his arrest during a court appearance on August 26, 2013 and officers' efforts to obtain a recording on Cadmus' iPad. See Am. Compl., ECF No. 22, Richard R. Cadmus, Jr. v. Frederick County Sheriff's Office, et al., No. 5:15-CV-053 (W.D. Va. filed Oct. 13, 2015). In fact, Cadmus filed a motion for discovery in the unrelated case that is identical to the motion filed in this action. Compare ECF

29

Nos. 64, 65 with Mot. to Stay, ECF Nos. 50, 51, Richard R. Cadmus, Jr. v. Frederick County Sheriff's Office, et al., No. 5:15-CV-053 (W.D. Va. filed Feb. 24, 2016).

Thus, Cadmus' motion for discovery on the "John Doe" defendants is best addressed in the unrelated action. Cadmus' motion in this case is therefore **DENIED**. If Cadmus names a "John Doe" defendant in a future amended complaint in this action, he may attempt to ascertain their real identity. If and when Cadmus is successful in this respect, he may file a motion for leave to amend to add a new party. In the event Cadmus cannot discover the identity of the "John Does" named in a future amended complaint, he may move to compel discovery of that information. Such a motion must identify the specific information Cadmus seeks and also demonstrate that his new claims are timely under Rule 15(c)(1)C).

## V.

For the reasons stated above, the court makes the following findings:

1. The court **ADOPTS** the report and recommendation (ECF No. 56) to the extent consistent with this opinion.

2. The court **GRANTS** Williamson's motion to dismiss the original complaint (ECF No. 14). All claims for monetary damages alleged against Williamson in his official capacity are **DISMISSED with prejudice**. Claims for injunctive relief alleged against Williamson in his official capacity are **DISMISSED without prejudice**. Claims for monetary damages alleged against Williamson in his individual capacity are also **DISMISSED without prejudice**.

3. The court **GRANTS** Nicholson's motion to dismiss the original complaint (ECF No. 25). All claims for monetary damages alleged against Nicholson in his official capacity are **DISMISSED with prejudice**. Claims for injunctive relief alleged against Nicholson in his official capacity are **DISMISSED without prejudice**.

30

Claims for monetary damages alleged against Nicholson in his individual capacity are also **DISMISSED without prejudice**.

4. The court **GRANTS** Cook's motion to dismiss the original complaint (ECF No. 22). All claims alleged against Cook in either her official or individual capacity are **DISMISSED with prejudice**.

5. The court **GRANTS in part** and **DENIES in part** Cadmus' motion to amend (ECF No. 29). Cadmus may file an amended complaint within **fourteen (14) days**, asserting any claim not dismissed with prejudice.

6. The court **DENIES** Cadmus' motion to stay consideration of the report and recommendation, to conduct jurisdictional discovery, and to compel disclosure of the identities of the "John Doe" defendants (ECF No. 64).

An appropriate Order will be entered this day.

Entered: 03-09-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge