IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

RICHARD R. CADMUS, Jr., )
)
    Plaintiff, )
) Civil Action No. 5:15-CV-045
v. )
)
ROBERT T. WILLIAMSON, et al., ) By: Michael F. Urbanski
) United States District Judge
    Defendants )
)

## MEMORANDUM OPINION

Pro se plaintiff Richard Cadmus brings this action alleging various federal and state law claims against the Frederick County, Virginia, Sheriff's Office ("FCSO"), Robert Williamson, Sheriff of Frederick County, Deputies Doug Nicholson, John Heflin, Barry Kittoe, Donald Lang, and Rick Singhas of the FCSO, and other unnamed members of the FCSO. The court must now rule on Cadmus's motion for leave to file a second amended complaint, ECF No. 72. Magistrate Judge Joel Hoppe issued a report and recommendation on Cadmus's motion on August 23, 2016, ECF No. 80, to which Cadmus submitted objections in response, ECF No. 83. For the reasons that follow, the court adopts the report and recommendation (ECF No. 80) in full. Cadmus's motion for leave to file an amended complaint is **GRANTED in part** and **DENIED in part**. Specifically, Cadmus's motion is **GRANTED** as to all unopposed claims, and **DENIED without** prejudice as to the claims Cadmus attempts to assert on behalf of Laura Carver and the estate of Laura Fabrizio. Cadmus's motion is **DENIED with prejudice** as to:

1. All official-capacity claims for monetary damages against Williamson and Nicholson;

2. All claims against the FCSO; and

3. All personal capacity claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act, 29 U.S.C. § 701 et seq.

I.

Cadmus filed his original complaint on June 9, 2015, naming Williamson, Nicholson, Cook, and twenty-five "John Does"[1] as defendants in both their official and individual capacities.[2] Williamson and Nicholson filed motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that the Eleventh Amendment barred any suit against them in their official capacities, and that Cadmus otherwise failed to state a plausible claim on any count. ECF Nos. 14, 25. Cook likewise filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that judicial immunity barred any suit against her, and that Cadmus failed to state a plausible claim. ECF No. 22. Cadmus subsequently filed a motion for leave to amend his complaint, and attached a proposed amended complaint for the court's review. ECF No. 29. Williamson and Nicholson objected to the motion to amend, claiming Cadmus's amended allegations were made in bad faith and were otherwise futile. ECF No. 41. The motion was referred to

---

[1] The caption on Cadmus's original complaint names twenty-five "John Doe" defendants, ECF No. 2, at 1, while his original factual allegations name only twenty "John Doe" defendants. Id. at 2. In his second proposed amended complaint, he seeks to bring claims against ten "John Doe" deputies based on different conduct than that alleged in his original complaint. See ECF No. 72-1, at 4. Because no party opposes his amendment as to these claims, the court will "freely give leave" to amend, Fed. R. Civ. P. 15(a)(2), and allow Cadmus to assert claims against these ten new "John Doe" defendants.

[2] The factual allegations underlying Cadmus's complaint were ably summarized in the first report and recommendation issued by the magistrate judge. See ECF No. 56, at 2–7, 32–34; see also ECF No. 80, at 4–6. These allegations remain largely unchanged between Cadmus's first and second proposed amended complaints. Accordingly, as in the prior opinion in this matter, see ECF No. 66, at 6 n.4, the court will adopt the magistrate judge's summary of the facts.

2

United States Magistrate Judge Joel C. Hoppe, who recommended granting defendants' motions to dismiss, and granting in part and denying in part Cadmus's motion for leave to amend. ECF No. 56, at 56–57. Cadmus filed two sets of objections, ECF Nos. 58–61, and asked the court to stay its review of the report and recommendation pending a period of jurisdictional discovery. ECF Nos. 64, 65.

In a March 10, 2016 memorandum opinion and order, this court adopted the magistrate judge's recommendation in part. ECF Nos. 66, 67. The court granted all named defendants' motions to dismiss and denied Cadmus's motion to stay pending discovery,[3] but gave Cadmus leave to amend as to certain counts. ECF No. 66, at 2. Cadmus was permitted to amend his complaint to the extent that he wished to continue to pursue monetary claims against Williamson and Nicholson in their individual capacities or claims for injunctive relief. Id. at 26. He was also allowed to assert a variety of new causes of action, and to add new defendants. See id. at 17–18 n.8.

Cadmus never filed his first proposed amended complaint. Instead, on March 29, 2016, Cadmus moved for permission to file a second amended complaint. ECF No. 72. The attached proposed second amended complaint includes new plaintiffs and defendants, and asserts new claims in addition to those already included in the original complaint and proposed first amended complaint. See ECF No. 72-1. After Nicholson and Williamson filed

---

[3] Cadmus wished to conduct jurisdictional discovery to bolster his argument that the claims against Williamson and Cook were not barred by the Eleventh Amendment and judicial immunity, respectively. ECF No. 65, at 2; see ECF No. 66, at 27–28. The court denied this request, finding "the overwhelming weight of authority in this circuit" showed these defendants were entitled to immunity. Id. at 28. Cadmus also moved to compel discovery of the names and addresses of the "John Doe" defendants named in his complaints. ECF No. 65, at 3. The court denied this request as well, because these unknown defendants "are actually defendants in an unrelated action Cadmus filed against the Frederick County Sheriff's Office." ECF No. 66, at 29; see Cadmus v. Frederick County Sheriff's Department, et al., No. 5:15-cv-053 (hereinafter "Cadmus II"). The court permitted Cadmus's "John Doe" discovery in Cadmus II. See Cadmus II, ECF No. 58, at 18.

3

a response in opposition, ECF No. 73, to which Cadmus replied, ECF Nos. 74, 75, Magistrate Judge Hoppe issued a report and recommendation. ECF No. 80.

The report first noted that defendants did not oppose Cadmus's motion in its entirety, and recommended that his motion to amend be granted as to the unopposed claims. Id. at 7. However, defendants did object to the inclusion of new plaintiffs: Cadmus seeks to assert claims in his capacity as administrator of the estate of his mother, Laura Fabrizio, and also attempts to add his sister, Laura Carver, as a plaintiff. Id. at 6. Noting that Cadmus, as a pro se litigant, may not represent another's interests, and that Carver had not yet entered an appearance before the court, the magistrate judge recommended that the motion be denied without prejudice as to claims by Carver. Id. at 10. Because Cadmus is not the sole beneficiary of Fabrizio's estate, the report found that he may not represent his mother's estate pro se; accordingly, the magistrate judge recommended that the addition of claims by the estate also be denied without prejudice.[4] Id.

Defendants also objected to Cadmus's new claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 et seq.,[5] arguing that he was without standing to assert these claims for alleged injuries sustained by Fabrizio.[6] The magistrate judge agreed, finding that it was "doubtful" that Cadmus has constitutional standing, and, even if he does, his claims "do not satisfy the

---

[4] After the report and recommendation was docketed, Carver moved for leave to appear as a plaintiff, ECF No. 81, and attorney Bradley G. Pollack noted an appearance on behalf of Fabrizio's estate, ECF No. 82.

[5] The court refers to claims brought under the ADA and the RA as "ADA/RA claims." Though these laws are not identical, they overlap in subject matter. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 214 (4th Cir. 2002) ("To the extent possible, [the court] construe[s] similar provisions in the two statutes consistently." (citing Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 57 (4th Cir. 1995))). Moreover, as explained infra, the court resolves all claims involving these two statutes on standing grounds, and thus need not differentiate between the two.

[6] The magistrate judge declined to consider the standing of Carver or Cadmus's standing as administrator of Fabrizio's estate, given that neither was properly represented before the court. ECF No. 80, at 10 n.8.

4

prudential requirements for third-party standing." ECF No. 80, at 10–11. Accordingly, the report recommended that Cadmus's "motion be denied with prejudice as to Cadmus's personal-capacity claims under the ADA and Rehabilitation Act." Id. at 11. Because the report concluded that Cadmus did not have standing to bring his ADA claims, the magistrate judge did not reach the issue of whether sovereign immunity would preclude official capacity ADA claims against the defendants. Id. at 12–13.

Finally, the magistrate judge considered Cadmus's official-capacity claims against individual defendants and his claims against the FCSO. The report first noted that Cadmus conceded that the FCSO should not be named as a defendant, and that "Cadmus does not offer any reason for disregarding his earlier concession." Id. at 12; see ECF No. 45, at 7 ("Plaintiff agrees FCSO should not be amended as a defendant in his complaint (conceded)."); accord Clark v. Beasley, No. 3:03-CV-1074, 2004 WL 3222732, at *4 (E.D. Va. July 8, 2004), aff'd, 118 F. App'x 739 (4th Cir. 2005) (noting that a sheriff's office is not an entity independent of the sheriff, and thus cannot be sued). The report thus recommended that Cadmus not be permitted to amend his complaint to reassert claims against the FCSO. Next, the magistrate judge pointed out "some confusion" in Cadmus's second amended complaint as to which claims were asserted against Williamson and Nicholson in their official capacities:

> Cadmus states at various points that only his ADA claims are brought against the [d]efendants in their official capacities, [ECF No. 72-1, at 3 nn.2–3; ECF No. 75, at 6–8], but the proposed second amended complaint also lists official-capacity [d]efendants in Cadmus's claim for retaliation under the First Amendment, [ECF No. 72-1, at 60], and in the survival action brought on behalf of the Estate, id. at 65.

5

ECF No. 80, at 12. Accordingly, the magistrate judge reiterated that Cadmus may not bring previously alleged official capacity claims against these defendants.

## II.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert. denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a

6

failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

Id. at 846 (first brackets in original) (citing Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)). A plaintiff who reiterates his previously raised arguments will not be given "the second bite at the apple []he seeks." Id. Instead, his re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.

### III.

Cadmus's objections are brief, and do not contest most of the magistrate judge's recommendations. Cadmus does not object to the finding that his official-capacity, non-

7

ADA/RA claims are barred or that the FCSO is not a proper defendant.[7] ECF No. 80, at 12. Accordingly, the court adopts these findings. See Thomas, 474 U.S. at 154. Cadmus may not assert any official-capacity, non-ADA/RA claims against Williamson or Nicholson; nor may he reassert claims against the FCSO. Cadmus also declines to object to the magistrate judge's recommendation that he not be allowed to add Carver or Fabrizio's estate as plaintiffs, ECF No. 80, at 9–10. As such, he is not entitled to review of this issue either, and the court now adopts the recommendation of the magistrate judge, and declines to allow Cadmus to add Carver or Fabrizio's estate as parties.[8]

In fact, Cadmus lodges only two objections to the findings of the magistrate judge. ECF No. 83. First, he argues that he has standing to bring ADA/RA claims based on the alleged failure of law enforcement to attend to Fabrizio's needs. Id. at 1–3. He bases his constitutional standing on the emotional distress he experienced when he learned of his mother's death. Id. at 2. This distress "caused Cadmus[] severe and measurable hypertension, high blood pressure . . . lost sleep[,] nightmares[,] and created enormous turmoil within Cadmus which manifested itself into sickness and disease." Id. at 3. Moreover, he argues that he satisfies prudential standing requirements[9] as well: first, the "close relationship"

---

[7] This court's previous memorandum opinion disallowed his official-capacity claims, none of which were asserted under the ADA or RA, and ignored any reference to FCSO as a defendant, given that Cadmus had previously conceded that issue. ECF No. 66, at 1 n.1, 12; supra pp. 3, 5.

[8] This conclusion is unchanged by Carver's motion for leave to appear as a pro se plaintiff, ECF No. 81, or by the fact that attorney Bradley Glenn Pollack has noted an appearance on behalf of Fabrizio's estate, ECF No. 82. Each of these filings asks the court to note their appearance in this case—Carver, appearing pro se, and Pollack, as counsel for the estate of Laura Fabrizio. As such, the court will construe them as motions for leave to join parties to this action under Rule 19 of the Federal Rules of Civil Procedure. Carver and Pollack are directed to file a pleading stating a claim for relief under Rule 8 of the Federal Rules of Civil Procedure and a supporting memorandum explaining the grounds for joinder in this case under Rule 19. This pleading and memorandum must be filed by March 14, 2017, and defendants' responses are due on March 28, 2017.

[9] "To overcome the prudential limitation on third-party standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a close relationship between [himself] and the person whose right [he] seeks to assert; and (3) a hindrance to the third

8

requirement "is easily established as Cadmus was the son of Fabrizio and her care-giver," and second, "it is impossible that Cadmus' deceased mother can now vindicate her own rights"—her death hinders her ability to protect her interests. Id. at 2–3.

Second, and related, Cadmus argues that he is entitled to bring official capacity ADA/RA claims against Frederick County Sheriff's Deputies.[10] Because "Virginia accepts Federal [f]unding," Cadmus argues that any Eleventh Amendment defense is waived, and Frederick County Officials are not protected by sovereign immunity. Id. at 4 & n.2. Beyond a reference to unspecified "other things," Cadmus advances no other arguments. Id. at 4. Moreover, he declines to cite case law because he "is pro se and not required to do so." Id. at 4 n.3.

## A.

Cadmus lodged only two objections to the report, both of which concern his ADA/RA claims. Accordingly, the court largely adopts the recommendations of the magistrate judge. Cadmus may not add Carver or his mother's estate as plaintiffs; nor may he reassert official-capacity claims against Williamson, Nicholson, or any claims against the FCSO. After removing the foregoing from consideration, the sole issue remaining before the court is whether Cadmus's amended claims under the ADA and RA, brought on his own behalf, should be denied as futile. The court concludes that they should be so denied.

---

party's ability to protect his or her own interests." ECF No. 80, at 11 (internal quotation marks omitted) (brackets in original) (quoting Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 215 (4th Cir. 2002)).
[10] The report declined to decide "whether Eleventh Amendment immunity would provide a defense to official-capacity claims brought under the ADA and Rehabilitation Act" because the court had already determined that Cadmus did not have standing to bring these claims on his own behalf. See ECF No. 80, at 13. Cadmus argues both that he does have standing to bring these claims on his own behalf, and that the Eleventh Amendment provides no defense.

9

When considering a motion to amend, "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). An amendment is futile where "the proposed amendment is clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)).

"In determining if [an] amendment is futile, [the court] appl[ies] the same standard used in determining whether to grant a motion to dismiss." Ohio Valley Envtl. Coal., Inc. v. Hernshaw Partners, LLC, 984 F. Supp. 2d 589, 593 (S.D.W.V. 2013). Thus, if an amended claim fails to surmount one of the defenses listed in Rule 12(b) of the Federal Rules of Civil Procedure, that amendment is futile. See Fed. R. Civ. P. 12(b) (listing defenses that may be asserted by motion). "Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction." Nat. All. For Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11-cv-941, 2012 WL 1440226, at *3 (M.D.N.C. Apr. 26, 2012). This is true of challenges to constitutional standing and challenges to prudential, third-party standing. Bailey v. Atl. Auto. Corp., 992 F. Supp. 2d 560, 565 (D. Md. 2014). As such, to prevail on his motion to add ADA/RA claims, Cadmus must satisfy both constitutional and prudential standing requirements.

10

**B.**

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498 (1975). Even if this constitutional requirement is met, "[a] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (quoting Warth, 422 U.S. at 498); see Singleton v. Wulff, 428 U.S. 106, 114 (1976) ("[T]hird parties themselves usually will be the best proponents of their own rights."). However, this rule is not absolute, and a party may be permitted to assert the rights of others if the party can show that he "has a 'close' relationship with the person who possesses the right," and "there is a 'hindrance' to the possessor's ability to protect his own interests." Kowalski, 543 U.S. at 130 (quoting Powers v. Ohio, 499 U.S. 400, 411 (1991)).

Because Cadmus seeks to vindicate his mother's rights, he must satisfy the prudential requirements for third-party standing. See, e.g., A Helping Hand, LLC v. Baltimore Cty., 515 F.3d 356, 362–63 (4th Cir. 2008). This requires "a close relationship between [Cadmus] and the person whose right [he] seeks to assert; and . . . a hindrance to the third party's ability to protect his or her own interests." Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 215 (4th Cir. 2002).

Cadmus likely meets the first requirement—he appears to have had a close relationship with his mother, and, as administrator of her estate, is closely connected to the current holder of any potential ADA/RA claim. However, he has failed to satisfy the second

11

requirement of third-party standing: a hindrance to the estate's ability to protect its interests.[11]

A decedent's estate represents "the collective assets and liabilities of [the] dead person." Black's Law Dictionary (10th ed. 2014). Among these assets are any causes of action that survive the decedent's death. Cf. Lewis v. Weyerhaeuser Co., 141 Fed. App'x 420, 424 (6th Cir. 2005) (holding, in the bankruptcy context, that "[i]t is well-settled that a cause of action is an asset"). See generally Fed. R. Civ. P. 25(a) (providing for substitution of "proper party—often the estate—upon litigant's death). Thus, unless Cadmus demonstrates otherwise, the estate is best situated to press Fabrizio's claims.

In his objections, Cadmus points out that "it is impossible that Cadmus' deceased mother can now vindicate her own rights as . . . she died." ECF No. 83, at 3. Though he is of course correct that Fabrizio's death prevents her from personally bringing any ADA/RA claims, he is wrong in suggesting that he, personally, must litigate in her stead. To the contrary, her estate is perfectly capable of bringing any claims under the ADA or RA that Fabrizio could have pressed while alive; indeed, cases around the country demonstrate an estate's ability to bring ADA/RA claims. See, e.g., Martin v. Cal. Dept. of Veterans Affairs, 560 F.3d 1042 (9th Cir. 2009) (estate brought ADA/RA claims on behalf of decedent);

---

[11] Cadmus must satisfy both constitutional and prudential standing requirements to bring his ADA/RA claims. See ECF No. 80, at 11 ("Although [third-]party standing allows a party to assert the claims of other parties, the plaintiff must still independently have standing to sue." (brackets in original) (internal quotation marks omitted) (quoting Blake v. Southcoast Health Sys., Inc., 145 F. Supp. 2d 126, 137 n.16 (D. Mass. 2001))). As explained infra, Cadmus's failure to demonstrate his third-party standing dooms his motion to amend as to the ADA/RA claims. Accordingly, this opinion does not reach the issue of Cadmus's constitutional standing to bring these claims, except to note in passing that the court is skeptical that Cadmus's purported emotional distress rises to the level of a "concrete and particularized" "injury-in-fact" sufficient to confer subject matter jurisdiction on the court. See Smith v. Frye, 488 F.3d 263, 273 (4th Cir. 2007) ("[O]ne cannot collect for emotional damage . . . occasioned by harm done to a family member absent fairly particular circumstances." (internal quotation marks and citations omitted)); Blake v. Southcoast Health Sys., Inc., 145 F. Supp. 2d 126, 137 n.16 (D. Mass. 2001) ("Emotional involvement i[n] a lawsuit is not enough to meet the case-or-controversy requirement." (brackets in original) (internal quotation marks omitted) (quoting Ashcroft v. Mattis, 431 U.S. 171, 173 (1977))). See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 562–64 (1992).

12

Howe v. Hull, 873 F. Supp. 72 (N.D. Ohio 1994) (same); Flaum v. Gloucester Lanes, Inc., No. 4:13cv131, 2015 WL 364603 (E.D. Va. Jan. 27, 2015) (substituting estate as plaintiff after ADA claimant died during pendency of lawsuit). Cadmus has offered no reason Fabrizio's estate would be hindered in protecting its own interests. Moreover, attorney Bradley Glenn Pollack has noted an appearance on behalf of Fabrizio's estate—only strengthening the court's conclusion that the estate is perfectly well-positioned to vindicate its own rights. Where, as here, the estate is not hindered in pressing the claims of the decedent, the court may not authorize a third party, even a relative, to proceed instead. See Martin, 560 F.3d at 1050 ("As a general rule, a third party does not have standing to bring a claim asserting a violation of someone else's rights. . . . Here, the Estate, which is the other Plaintiff in this action, has pursued a procedurally proper . . . claim directly on behalf of [the decedent]. We therefore hold that [decedent's daughter] does not have standing . . . ." (ellipses, brackets, quotation marks, and internal citations omitted)).

By contrast, in cases where courts have permitted a third party to litigate another's claim, that third party demonstrated a hindrance to the *current* holder of the right to sue to vindicate his interests. For instance, in Griswold v. Connecticut, 381 U.S. 479 (1965), the Supreme Court permitted doctors to assert the privacy rights of married patients in challenging a law that made it a crime to give contraception advice. See Singleton, 428 U.S. at 115 (discussing the Griswold opinion). The Court reasoned that the married couple was unable to assert its own privacy interests (because they were not criminally charged under the law in question), and their rights were "'likely to be diluted or adversely affected'" if they could not be asserted in such a case." Id. (quoting Griswold, 381 U.S. at 481). Similarly, in

13

NAACP v. Alabama, 357 U.S. 449 (1958), the NAACP was allowed to assert the constitutional right of its members to withhold their connection to the association, because, "[t]o require that [the right] be claimed by the members themselves would result in nullification of the right at the very moment of its assertion." Id. at 459; see also Smith v. Jefferson Cty. Bd. of School Comm'rs, 641 F.3d 197, 208–09 (D.C. Cir. 2011) (cataloguing a number of cases in which the Supreme Court permitted third-party claims based on a hindrance to the ability of a non-party to protect its own interests).

In support of his argument, Cadmus cites to Powers v. Ohio, 499 U.S. 400 (1991). In Powers, the Supreme Court held that criminal defendants have standing to raise the rights of venirepersons to be chosen for jury service in a racially neutral manner. Id. at 412–15. The Court found that racially excluded venirepersons were hindered in vindicating their own rights in a number of ways. First, in contrast to criminal defendants, "[p]otential jurors are not parties to the jury selection process and have no opportunity to be heard at the time of their exclusion." Id. at 414. Second, it would be difficult for a juror, affected only by a prosecutor's single use of a peremptory challenge, to "show a likelihood that discrimination against him at the voir dire stage will recur." Id. at 415. Finally, "the small financial stake involved and the economic burdens of litigation" present "considerable practical barriers to suit" that leave a dismissed juror with "little incentive to set in motion the arduous process needed to vindicate his own rights." Id.

None of the factors the Powers Court identified are present here. Cadmus has not shown that he, in comparison to Fabrizio's estate, will be subject to fewer disincentives to litigation or will be better able to demonstrate that Fabrizio was harmed by a purported

14

violation of the ADA or RA. On the contrary, Fabrizio's estate is represented by counsel and is well situated to bring whatever claims counsel deems meritorious. The court therefore overrules Cadmus's first objection, and finds that he is without standing to bring Fabrizio's claims under the ADA and RA.[12]

## IV.

Because Cadmus has not demonstrated any hindrance Fabrizio's estate would face in protecting its own interests, he may not now bring ADA/RA claims on her behalf. He also may not add Laura Carver or Fabrizio's estate as plaintiffs; nor may he reassert claims previously dismissed with prejudice by the court (and, for that matter, previously conceded by Cadmus). He may, however, amend his complaint as to any claims not opposed by defendants. Accordingly, the court **ADOPTS** the report and recommendation (ECF No. 80) in full, and **GRANTS in part** and **DENIES in part** Cadmus's motion for leave to file an amended complaint (ECF No. 72). An appropriate Order will be entered.

Entered: 02-27-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[12] Because Cadmus may not bring ADA/RA claims on his mother's behalf, the court need not reach the subject of Cadmus's second objection: whether sovereign immunity protects the FCSO and its personnel from ADA/RA suits. See ECF No. 80, at 13 (This question [whether Cadmus's official-capacity ADA/RA claims may proceed] is moot as to any claims asserted by Cadmus individually because . . . he does not have standing to bring these claims on his own behalf.").